UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: CALVIN GODWIN

    Debtor.
_____

Case No. 8:20-bk-4446-CPM

SCOTT THROWER, CAROLINA ELECTRICAL WORKERS RETIREMENT FUND, NATIONAL ELECTRICAL BENEFIT FUND, and FAMILY MEDICAL CARE PLAN,

    Appellants,

v.

Case No. 8:21-cv-2924-KKM

CALVIN GODWIN,

    Appellee.
_____

# ORDER

Calvin Godwin's business owed money to his employees' pension and medical plan funds. Rather than pay, he took the money from his business's account and put it in his personal account. Then he declared bankruptcy. The funds and their trustee filed an adversary proceeding, arguing that the money should be excepted from discharge because the debt arose from defalcation while Godwin was acting in a fiduciary capacity. *See* 11 U.S.C. § 523(a)(4). The bankruptcy court granted summary judgment to Godwin,

concluding that he was not acting in a fiduciary capacity when he took the money. Because that conclusion was error, I reverse and remand the case to the bankruptcy court to determine whether Godwin's actions constituted defalcation.

I. BACKGROUND

Carolina Electrical Workers Retirement Fund, National Electrical Benefit Fund, and Family Medical Care Plan (Appellant benefit funds) accept contributions from various employers under collective bargaining agreements and provide pension and medical plans to members of several unions who work for those employers. (Doc. 20 at 7–8.) The benefit funds are authorized by the Labor Management Relations Act and governed by the Employee Retirement and Income Security Act (ERISA). (*Id.*) Scott Thrower is a trustee and fiduciary of the funds. (*Id.*)

Calvin Godwin, with his business partner, Darmellon Lee, owned Global Team Electric, LLC (GTE). (Doc. 21 at 85.) Lee was responsible for day-to-day management, including bill paying. (Doc. 15-48 ¶ 6.) GTE used union workers on many of its construction projects and therefore executed collective bargaining agreements (CBAs) with some unions.

On April 17, 2017, Godwin and Lee signed letters of assent to CBAs with International Brotherhood of Electrical Workers Local 379 and 80. (Doc. 19-1 at 60–61.) Lee signed the letter of assent for Local 379 and Godwin signed the letter for Local 80.

2

(*Id.*) These CBAs obligated GTE to contribute to the Appellant benefit funds, which provide pension and healthcare for union members who performed work for GTE. (Doc. 19-1 at 15–17; Doc. 15-56 at 9–10.) Additionally, under the CBAs, GTE agreed to be bound by the Amended Restated Employees Benefit Agreement and Declaration of Trust (Declaration of Trust), which stated that "[c]ontributions made or required to be made pursuant to [the CBA] shall be deemed part of the Trust estate and shall constitute Trust Assets *whether or not* they are collected." (Doc. 19-1 at 30; Doc. 15-56 at 10. (emphasis added))

Beginning in the fall of 2019, GTE failed to make several payments required under the CBAs to the benefit funds. On March 27, 2020, Lee initiated a $106,387.58 payment to Appellants for a portion of the past due contributions, which was reflected on Appellants' bank statement. (Doc. 15-8 ¶ 15; Doc. 15-84; Doc. 15-26 at ¶ 9.) On March 30, 2020, Godwin stopped the electronic transfer and the money "did not leave [GTE's bank]." (Doc. 15-69 ¶¶ 7–8). Godwin then withdrew the amount and put it in his personal account that Lee could not access. (Doc. 15-8 ¶ 15; Doc. 15-55 at 4.)

Godwin filed for Chapter 7 bankruptcy on June 10, 2020, and Appellants filed the adversary proceeding on July 26, 2020. (Doc. 15-7.) Appellants alleged that the $106,387.58 was a nondischargeable debt under 11 U.S.C. § 523(a)(4), which provides that debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

3

larceny" are not dischargeable in bankruptcy. (*Id.* at 7.) Appellants moved for summary judgment in November of 2020, arguing that "the undisputed facts show that Defendant Godwin is liable for a nondischargeable debt to the [Appellant] Funds pursuant to Section 523(a)(4)." (Doc. 15-23.) Godwin responded and asserted that he was entitled to summary judgment. (Doc. 15-68.)

After appointing pro bono counsel for Godwin and holding several status conferences, the bankruptcy court denied summary judgment for Appellants and granted summary judgment for Godwin.[1] (Doc. 15-1.) The bankruptcy court reasoned that the issue was whether Godwin was acting as a fiduciary over assets of the benefit funds. (Doc. 18-1 at 4, 40.) The court clarified via testimony how the wire transfer process worked and that, although the $106,387.58 appeared provisionally on Appellants' bank statement, the money never left GTE's bank. (Doc. 17 at 6.) As a result, the bankruptcy court determined that it never became an asset of the benefit funds, so Godwin was not acting as a fiduciary when he took the money from GTE's account. (*Id.* at 9.) Without the fiduciary relationship, the debt could not fit the exception in § 523(a)(4) and was therefore dischargeable.

---

[1] During the final status conference, the bankruptcy court mentioned granting summary judgment in favor of Godwin as the nonmoving party under Federal Rule of Bankruptcy Procedure 7056 but clarified in a later written order that Godwin moved for summary judgment in his response to Appellants' motion. (Doc. 15-1.)

4

On December 16, 2021, Appellants filed a notice of appeal to this Court. (Doc. 1.) They allege that the bankruptcy court erred when it granted summary judgment for Godwin because he was acting as a fiduciary. (Doc. 20.) I heard oral argument on December 1, 2022, and allowed the parties to file supplemental briefs addressing the Eleventh Circuit's intervening decision, *In re Forrest*, 47 F.4th 1229 (11th Cir. 2022). (Doc. 28.) Both parties submitted supplemental briefs. (Doc. 29; Doc. 30.)

## II. LEGAL STANDARD

A district court serves in an appellate role while reviewing a bankruptcy court's decisions. *See Williams v. EMC Mortg. Corp.*, 216 F.3d 1295, 1296 (11th Cir. 2000). Accordingly, a district court reviews the bankruptcy court's legal conclusions, including a grant of summary judgment, de novo. *In re Prudential of Florida Leasing, Inc.*, 478 F.3d 1291, 1296 (11th Cir 2007); *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).

## III. ANALYSIS

Section 523 of the Bankruptcy Code provides several exceptions to the general rule that debts will be discharged in bankruptcy. *See* 11 U.S.C. § 523. The relevant exception here provides that a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is not dischargeable. *Id.* at § 523(a)(4). Appellants make no argument that Godwin took the money by fraud, embezzlement, or larceny. Thus,

Appellants can succeed only if they establish that Godwin was acting in a fiduciary capacity and his removal of the $106,387.58 from GTE's business account was a defalcation.

Before the bankruptcy court and in their initial briefs, Appellants did not contend that the Declaration of Trust made Godwin a fiduciary. Instead, they argued that Godwin was a fiduciary under ERISA's definition and that he committed a defalcation. Godwin argues that he can be a fiduciary over plan assets only if he is an administrator or officer of the benefit funds, or if he otherwise had control over assets of the fund. No one argues that he was an administrator or officer of the benefit funds, and he claims that, because the money never left GTE's bank account, it never became an asset of the fund. So, in his view, he was not a fiduciary over plan assets when he took the money. Godwin further argues that his actions did not constitute a defalcation.

### A. Is an ERISA-deemed fiduciary "acting in a fiduciary capacity" for the purposes of § 523(a)(4)?

Under ERISA, "a person is a fiduciary with respect to [an employee benefit] plan to the extent [that] he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). This kind of fiduciary is often called a "deemed fiduciary" as opposed to a "named fiduciary," which is defined in § 1102. An owner of a company who agrees to contribute to the fund as an employer is a deemed fiduciary when he exercises authority or control over plan assets. *See ITPE Pension*

6

*Fund v. Hall*, 334 F.3d 1011, 1013–14 (11th Cir. 2003). The general rule is that unpaid employer contributions do not constitute plan assets, but when "the agreement between the fund and the employer specifically and clearly declares otherwise," the past due contributions are assets of the fund. *Id.* Here, the Declaration of Trust that GTE agreed to be bound by through the CBAs deemed required contributions a part of the trust estate "whether or not they are collected." Doc. 15-56. at 10.

Godwin contends in his briefs and at oral argument that he never agreed to be bound by the Declaration of Trust; Lee did. (Doc. 24 at 20). Whether true or not,[2] Godwin's assent to the agreement is immaterial because Godwin's fiduciary duty is statutory, not contractual. The Declaration of Trust simply identifies to which assets he owes that duty—it does not create the duty. Thus Godwin, as someone who exercised control over the past due contributions, was a deemed fiduciary under ERISA. The bankruptcy court therefore erred when it determined that the only way the funds became plan assets were if they entered Appellants' bank account.

But simply determining Godwin was an ERISA-deemed fiduciary is not enough to show that he was "acting in a fiduciary capacity" for the purposes of § 523(a)(4). The meaning of "fiduciary capacity" in § 523(a)(4) is "fixed by judicial construction" and the

---

[2] The record reflects that Godwin signed the letter of assent to the CBA for Local 80 and Lee signed the letter of assent for Local 379 on the same day, and both CBAs agree to be bound by the Declarations of Trust. (Doc. 19-1 at 60–61.)

exception applies in a "strict and narrow sense" to "technical trusts, and not those which the law implies." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934). Applying these rules, circuits are split on whether an ERISA-deemed fiduciary acts "in a fiduciary capacity." *See In re Hemmeter*, 242 F.3d 1186 (9th Cir. 2001) (determining a deemed fiduciary acts in a "fiduciary capacity" under §523); *In re Bucci*, 493 F.3d 635 (6th Cir. 2007) (determining that "the definition of a fiduciary under ERISA is broader than the common-law definition" used to interpret § 523(a)(4), so a deemed fiduciary does not act "in a fiduciary capacity"); *Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004) (noting that "[s]imply possessing property to which an ERISA plan asserts a claim does not place one in a fiduciary relationship with the plan" for the purposes of §523(a)(4)); *see also* Emil Khatchatourian & Brendan M. Gage, *Unpaid ERISA Contributions and Fiduciary Liability under § 523(a)(4)*, Am. Bankr. Inst. J., November 2012, at 52.

In this circuit, a three-part test determines whether a debtor acted "in a fiduciary capacity" based on a fiduciary relationship created by a contract or statute. *In re Forrest*, 47 F.4th at 1241 (determining that a debtor who had a fiduciary duty under the Perishable Agricultural Commodities Act (PACA) did not act "in a fiduciary capacity"). First, "the fiduciary relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary." *Id.* Second, a contract or statute "must define sufficient trust-like duties imposed on the trustee," the most important being "the duty to

8

segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose." *Id.* Finally, the fiduciary relationship must exist before the act of fraud or defalcation and cannot arise from the act. *Id.* Although the Eleventh Circuit test is clear, that court has not yet had an occasion to apply the test to an ERISA-deemed fiduciary. In my view, an ERISA-deemed fiduciary narrowly passes the test. Section 1002(21)(a) of Title 29 provides an identifiable trustee, beneficiaries, and res. Godwin is an identifiable trustee because he "exercise[d] authority or control" over assets, the beneficiaries are the employees who benefit from the funds, and the res is the unpaid contributions that Godwin controlled. *See ITPE Pension Funds*, 334 F.3d at 1013–14. And the relationship existed before Godwin acted to remove the funds from GTE's account because Godwin exercised control over the funds at the moment they became due, not just by the act that Appellants allege constituted a defalcation.

Admittedly, ERISA cuts down the middle when it comes to "the two most important trust-like duties" of segregation and refraining from use for a non-trust purpose. *In re Forrest*, 47 F.4th at 1241. Like PACA at issue in *In re Forrest*, ERISA does not require segregation of funds by a deemed fiduciary. As the Eleventh Circuit noted, "it is apparent that the duty to segregate trust assets is an important factor in the analysis," but it is not "always necessary for a technical trust to exist." *Id.* A "statute can impose sufficient

9

duties if it requires that the trustee cannot use funds for a non-trust purpose even though the statute did not impose a duty to segregate trust assets." *Id.*

Unlike PACA, ERISA defines various duties for deemed fiduciaries, many of which are drawn from the common law of trusts, such as the duties of "care, skill, prudence, and diligence." *See* 29 U.S.C. § 1104; Restatement (Third) of Trusts § 77 (2007); *see also Eavenson v. Ramey*, 243 B.R. 160, 166 (N.D. Ga. 1999). It also specifically requires a deemed fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1104(a)(1), § 1106(b)(1); *see also Loc. Union 2134, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 713–14 (11th Cir. 1987) (contemplating a deemed fiduciary's duties under both §§ 1104 and 1106); *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1334 (11th Cir. 2006) (same).

While ERISA does not require the kind of segregation ordinarily found in traditional trusts, it imposes these other trust-like duties, including the "important" duty to use assets only for trust purposes. This is consistent with *Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir. 1980), *In re Angelle*, 610 F.2d 1335, 1340 (5th Cir. 1980), and *Quaif v. Johnson*, 4 F.3d 950, 954 (11th Cir. 1993), all of which note that complete segregation is not the only trust-like duty sufficient for a statutory trust to meet the

10

exception from discharge. Therefore, the statutory trust created by § 1002(21) has "sufficient trust-like duties imposed on the trustee" necessary for Godwin to have been acting "in a fiduciary capacity" under § 523(a)(4). *See In re Forrest*, 47 F.4th at 1241. Thus, the bankruptcy court erred when it determined Godwin did not act in a fiduciary capacity.

### B. Did Godwin's actions constitute a defalcation?

" 'Defalcation' refers to a failure to produce funds entrusted to a fiduciary." *Quaif*, 4 F.3d at 955. It "does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.' " *Id.* But defalcation does require an intentional wrong, either because the fiduciary knows his action is improper or because he "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013).

The bankruptcy court did not find fiduciary capacity, so it did not analyze whether Godwin's actions constituted a defalcation. Because there appears to be some dispute over whether his removal of the assets was knowing or reckless, and because state of mind is often not a question to be answered on summary judgment, *see Rogers v. Evans*, 792 F.2d 1052, 1059 (11th Cir. 1986) ("Ordinarily, summary judgment should not be granted in cases where motive, intent, subjective feelings, and reactions are to be searched."), I remand the case to the bankruptcy court to determine whether Godwin committed a defalcation when he moved the money into his personal account.

11

IV.  CONCLUSION

The bankruptcy court erred when it determined Godwin did not act in a fiduciary capacity. Accordingly, the following is **ORDERED**:

1. The decision of the Bankruptcy Court is **REVERSED**.

2. The case is **REMANDED** to the Bankruptcy Court to determine whether Godwin's actions constituted defalcation.

3. The Clerk is directed to **TERMINATE** any pending motions and deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 31, 2023.

Kathryn Kimball Mizelle
United States District Judge